JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant, Frank T. Lewis, a/k/a Tracy Lewis, appeals from the judgment of the Cuyahoga County Court of Common Pleas, rendered after a jury verdict, finding him guilty of aggravated robbery and having a weapon while under disability, and sentencing him to eight years in prison. For the reasons that follow, we affirm.
 {¶ 2} In June 2002, the Cuyahoga County Grand Jury indicted appellant on one count of aggravated robbery, in violation of R.C. 2911.01, with two firearm specifications, and one count of having a weapon while under disability, in violation of R.C. 2923.13. Appellant pled not guilty to the charges.
 {¶ 3} At trial, Donte Davis testified that at approximately 2:00 a.m. on June 17, 2002, he went to the Millenium Nightclub with his friend Cletus Curry. They parked their car in the parking lot and walked to the club. They were refused entry, however, and walked back to their car. According to Davis, as he reached for the driver's door handle, a black Ford Explorer backed up and stopped next to his car. Several people then "hopped out" of the Explorer. One individual had a gun, which he pointed at Davis' stomach. Davis testified that the individuals told him and his friend "to give up everything and don't try nothing," so Davis gave the men his keys, cell phone, Chapstick, and $280.00. After the men had robbed Davis and Curry, they jumped back in the Explorer and left. Only seconds later, Davis and Curry spotted a police car, flagged it down and told the police what had happened. As Davis and Curry were talking to the police, they saw the black Ford Explorer driving away. The police told them to stay where they were and chased the SUV.
 {¶ 4} Davis testified that the police returned about ten minutes later and drove him and Curry to where they had stopped the Explorer. According to Davis, the occupants of the Explorer were standing on the sidewalk and as he and Curry rode by in the police car, he identified one of the four as the individual who had the gun.
 {¶ 5} At trial, Davis identified State's Exhibit 1 as the gun used in the robbery. He also identified State's Exhibits 2, 3 and 4, which were pictures of items recovered from the Explorer, as pictures of his money, cell phone and keys, and State's Exhibit 5, a picture of the Explorer from which the suspects were pulled, as the vehicle used in the robbery.
 {¶ 6} Eighteen-year-old Richard Dixon testified that he lives in Detroit, Michigan. According to Dixon, on June 17, 2002, he and Rudolph Spain, appellant's nephew and Dixon's best friend, decided to borrow the Ford Explorer that belonged to Spain's girlfriend and drive from Detroit to Cleveland. They arrived in Cleveland at approximately 3:00 p.m.
 {¶ 7} They met up with appellant at a convenience store and then rode around for a while. Some time later, as appellant, Dixon and Spain were riding around in the Explorer, they saw Lamont Johnson walking down the street so they picked him up. According to Dixon, the subject of robbery came up when appellant and Spain were talking about how appellant was going to get money to repay Spain what he owed him. Appellant said that he "had better ways to get money than selling dope" but they needed a "pipe." According to Dixon, all four men then discussed robbing someone. After Johnson said that he had a gun at his house, Spain drove to Johnson's house and he, Dixon and appellant waited in the Explorer while Johnson went inside to get his gun. Dixon testified that when Johnson returned, they all passed the gun around. When appellant inspected the gun, he commented that it was broken because it did not have a firing pin but would work anyway. Johnson then put the gun under his seat and the men drove around for awhile longer.
 {¶ 8} When Spain got tired of driving, appellant took the wheel. According to Dixon, as they were looking for a place to park so they could go to the Millenium Nightclub, they saw two males walking toward the club and appellant remarked, "Them boys right there is rock boys; we could get them right here." A few minutes later, when they saw the same males walking toward the parking lot, someone told Dixon that he should rob them because he was from Detroit and no one would recognize him.
 {¶ 9} Dixon testified that he, Spain and Johnson then jumped out of the Explorer, while appellant waited in the car. Dixon approached the males and pointed the gun at them while Spain took the items from the males. According to Dixon, when the robbery was over, they got back in the Explorer and "then just everybody just started screaming" because the police were coming after them. They tossed the stolen items in the back of the Explorer and Dixon threw the gun out the window.
 {¶ 10} Dixon testified that in exchange for his testimony against appellant, the charges against him were reduced from aggravated robbery to robbery, with no firearm specifications, and the State nolled a carrying a concealed weapon charge, thereby reducing his possible sentence from six to twenty-four years incarceration to two to eight years incarceration, with the possibility of probation.
 {¶ 11} Cleveland police officer Patrick Andrejcak testified that on June 17, 2002, he and his partner were flagged down by two very excited males, who informed them that they had just been robbed. Andrejcak testified that when the victims spotted the Ford Explorer involved in the robbery, the police gave chase. According to Andrejcak, the Explorer was traveling at a high rate of speed with no lights on. The police officers stopped the vehicle and pulled out the four occupants. Upon searching the vehicle, they discovered a cell phone, keys and loose bills in the back of the SUV. Andrejcak testified that they then picked up the victims and brought them to the scene for a field identification. The victims identified the recovered property as that stolen from them. Shortly thereafter, other police officers advised Andrejcak that they had found the gun used in the robbery on a sidewalk nearby.
 {¶ 12} In addition to Andrejcak, several other Cleveland police officers testified about their participation in the arrest of the suspects involved in the robbery.
 {¶ 13} The jury subsequently found appellant guilty on each count of the indictment and on the firearm specifications. The trial court sentenced appellant to a term of eight years incarceration.
 {¶ 14} Appellant timely appealed, raising three assignments of error for our review.
 {¶ 15} In his first assignment of error, appellant asserts that there was insufficient evidence that he knowingly participated in the aggravated robbery and, therefore, the trial court erred in denying his Crim.R. 29(A) motion for acquittal.
 {¶ 16} Crim.R. 29(A) provides, in pertinent part:
 {¶ 17} "The court on motion of a defendant * * * shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 18} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins (1997),78 Ohio St.3d 380, 390. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The weight and credibility of the evidence are left to the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 19} R.C. 2911.01(A), which defines the offense of aggravated robbery, provides in pertinent part:
 {¶ 20} "No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 21} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *.
 {¶ 22} R.C. 2913.02(A) defines "theft":
 {¶ 23} "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * *
 {¶ 24} "(1) Without the consent of the owner or person authorized to give consent;
 {¶ 25} "* * *
 {¶ 26} "(4) By threat;
 {¶ 27} "(5) By intimidation." (Emphasis added).
 {¶ 28} Appellant contends that there was insufficient evidence that he knew that Richard Dixon was going to jump out of the Explorer and rob the two males with a gun. Appellant argues that Dixon "saw an opportunity to minimize his own exposure by giving false testimony about appellant" and, therefore, his "unconvincing and inconsistent" testimony was insufficient to support appellant's conviction for aggravated robbery. Appellant's argument, however, is without merit.
 {¶ 29} As set forth above, the test regarding the sufficiency of evidence is not whether the testimony is to be believed, but whether, if believed, the evidence would support a conviction. Here, Dixon testified that he, appellant, Spain and Johnson all talked about robbing someone, but appellant was the mastermind of the plan. He testified further that appellant said they needed a "pipe" for the robbery and after Johnson got a gun from his house, they all passed the gun around. Furthermore, after looking at it, appellant commented that it would work, even though it did not have a firing pin. Dixon also testified that appellant was driving the Explorer when they saw the two potential victims and that he commented, "Them boys right there is rock boys; we could get them right here." Finally, Dixon testified that appellant waited in the car while he and Spain robbed the victims and then drove away after they got back in the vehicle.
 {¶ 30} Pursuant to R.C. 2923.03:
 {¶ 31} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall * * *:
 {¶ 32} "(2) Aid or abet another in committing the offense.
 {¶ 33} "* * *
 {¶ 34} "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. * * *"
 {¶ 35} Dixon's testimony, if believed, was sufficient to demonstrate that appellant knowingly participated in the robbery of Donte Davis at gun point. Although appellant did not get out of the Explorer and point the gun at Davis, the evidence was sufficient to demonstrate that he aided and abetted his codefendants in the commission of the aggravated robbery.
 {¶ 36} Moreover, viewing the evidence in a light most favorable to the prosecution, it is apparent that the State presented sufficient evidence to support appellant's convictions on the firearm specifications and the charge of having a weapon while under a disability. Davis testified that one of the individuals pointed a gun at his stomach and demanded that he and his friend "give up everything and don't try nothing." Furthermore, the prosecutor and defense counsel stipulated that appellant was convicted on July 10, 2000 for possession of drugs in violation of R.C. 2925.11.
 {¶ 37} Because the evidence was sufficient to support the convictions, appellant's first assignment of error is overruled.
 {¶ 38} In his third assignment of error, appellant contends that his convictions were against the manifest weight of the evidence.
 {¶ 39} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. Thompkins, supra. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial order. State v. Glass, Cuyahoga App. No. 81607, 2003-Ohio-879, citing State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 40} Appellant contends that the evidence offered by the State "was of such a poor and unreliable quality that it could not prove the elements of the crime charged." In short, appellant contends that the testimony of Richard Dixon was not credible because of the plea bargain he reached with the State in exchange for his testimony and because it was inconsistent in several areas. Therefore, appellant contends, because Dixon's testimony was the only evidence to suggest that he was involved in the robbery, his convictions were against the manifest weight of the evidence. This argument is without merit.
 {¶ 41} The details of Dixon's plea agreement were revealed to the jury for its consideration. Through Dixon's testimony, the jury was made aware that Dixon's potential penalty under the plea agreement was significantly less than it otherwise would have been. The jury was therefore free to assess Dixon's credibility in light of his plea agreement. As noted earlier, the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact. DeHass,
supra.
 {¶ 42} Moreover, although Dixon's testimony may have been somewhat inconsistent, his testimony was not the only testimony upon which the State relied to demonstrate that appellant was guilty of the offenses charged. Donte Davis, one of the victims, identified the gun and the Explorer used in the robbery and also identified the keys, money and cell phone recovered from the Explorer as the property stolen from him during the robbery. Officer Andrejcak testified that he and his partner were flagged down by the victims seconds after the robbery. He testified further that as the victims were talking to the officers, they saw the Explorer involved in the robbery driving away. When the officers stopped the Explorer, they found appellant and three other suspects in the vehicle. The officers also found the stolen property in the back of the Explorer and subsequently, the victims identified one of the four individuals found in the Explorer as the individual with the gun during the robbery.
 {¶ 43} After reviewing the entire record, weighing the evidence and considering the credibility of the witnesses, we are not persuaded that the jury clearly lost its way or created such a miscarriage of justice that appellant's convictions must be reversed.
 {¶ 44} Appellant's third assignment of error is therefore overruled.
 {¶ 45} With respect to the aggravated robbery charge, the trial court instructed the jury:
 {¶ 46} "Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 17th day of June, 2002, and in Cuyahoga County Ohio, that the Defendant, while committing or attempting to commit a theft offense or in fleeing immediately after an attempt or offense upon Donte Davis, had a deadly weapon on or about his person or under his control and displayed it, brandished it or used the weapon."
 {¶ 47} In his second assignment of error, appellant contends that this instruction was improper because the trial court did not instruct the jury that he must have knowingly participated in the aggravated robbery and, furthermore, the trial court did not define the term "knowingly" for the jury with respect to the aggravated robbery offense.
 {¶ 48} The record reflects that after he charged the jury, the trial judge specifically asked the prosecutor and defense counsel if they had any additions or objections to the court's charge. The prosecutor responded negatively and defense counsel then stated, "None on behalf of the defendant." The trial judge then excused the jury for its deliberations. Not until several days later, after the jury had returned its verdict and immediately prior to sentencing, did defense counsel raise his objection to the jury charge.
 {¶ 49} Crim.R. 30 provides:
 {¶ 50} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. * * *"
 {¶ 51} Absent plain error, the failure to object to improprieties in jury instructions, as required by Crim.R. 30 is a waiver of the issue on appeal. State v. Underwood (1983), 3 Ohio St.3d 12; State v. Williams
(1977), 51 Ohio St.2d 112; Crim.R. 30(A) and 52(B).
 {¶ 52} The record reflects that in charging the jury, the trial judge defined the offense of aggravated robbery pursuant to its statutory definition and then stated:
 {¶ 53} "Before you can find that the defendant was committing or attempting to commit aggravated robbery, you must find beyond a reasonable doubt that the defendant committed or attempted to commit a theft offense."
 {¶ 54} The trial judge then defined "theft" for the jury:
 {¶ 55} "Theft is defined as no person with purpose to deprive another person of property shall knowingly obtain or exert control over the property without the consent of the owner or person authorized to give consent."
 {¶ 56} Later, in charging the jury regarding count two, having a weapon while under a disability, the trial judge defined "knowingly":
 {¶ 57} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or be of a certain nature.
 {¶ 58} "A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 59} In reviewing jury instructions on appeal, we must consider the specific charge at issue in the context of the entire charge, not in isolation. State v. Thompson (1987), 33 Ohio St.3d 1, 13. Here, viewing the aggravated robbery charge in the context of the entire charge, we find no plain error. First, the trial judge gave the proper statutory definition for the offense of aggravated robbery. The element of "knowingly" is not included in the offense of aggravated robbery, but is specified in the underlying theft offense of the aggravated robbery. The trial judge properly charged the jury that theft requires that a person "knowingly" obtain or exert control of the property of another without that person's consent. The trial judge later gave a specific definition of "knowingly." When viewed in the context of the overall charge, the jury was properly charged regarding all of the elements of aggravated robbery and provided a sufficient definition of "knowingly."
 {¶ 60} Appellant's second assignment of error is therefore overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J., and SEAN C. GALLAGHER, J., concur.